Peck J.
dissented.
If a lawyer be asked why in an action of debt the plaintiff shall not recover more than the demand laid in the declaration, the answer would naturally be, that it is all he asks, and recurring to his own premises, he must be . estopped to say, he will go beyond them; and even then when declaring for what he demands, he must lay such facts'and circumstances, as show him entitled to it, otherwise the law will withhold judgment in his favor.
From a proposition and conclusion so plain and obvious, let us pass to the position assumed by the state, against Mitchell.
The law declares, that when one of sound mind shall unlawfully kill a reasonable creature, in being under the peace of the state, with malice aforethought, such person shall be deemed guilty of murder. But this murder may be one of two degrees, making a higher and lower grade of murder, called the first and second degree, and differently punished.
That we may know when the first or- higher degree of murder has been perpetrated, the law declares, that if it be done by poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious, and premeditated killing, it shall be murder in the first degree; but if not done under these circumstances, and yet be done wilfully and maliciously, it shall be murder in the second degree.
*535 When a penalty is asked, what must be shown? The answer is, all such facts and circumstances as will show, that the party demanding has right to the penalty demanded. This is the rule even from the motion against a constable, up to the highest grade of action, information, or prosecution.
Our bill of rights, sec. 9, declares, that an accused shall have a copy of the accusation against him, and may demand the nature and cause of it. For what, I would ask, has this guaranty been ingrafted upon the frame work of our government? Surely not, that he may be mocked at and taken by surprise.
Yet if it be true, that he may be charged with facts, which make an offence of a less grade, and yet be made answerable for facts not laid, of a higher grade, he will he mocked at and surprised by the attack. -
When he examines the bill, he does not find in it a charge of murder by poison, or by lying in wait, or of wilful, deliberate, malicious and premeditated killing; on the contrary, it is a charge of another nature and degree, a wilful and' malicious killing only. What is the penalty? —not the life of the accused. The State has not said she. sought it; and shall she he permitted to say she will have that, by indirect means, which she will not inform us directly she is seeking?
When the Jew took the bond for the pound of flesh, he omitted to insert the blood, and he lost the penalty, because he could not take the one without the other; nor has the decision of the case ever been complained of. And now,, for the first time, we are called upon to reverse the decree.
Upon principle, no-question, to my mind, can be plainer, than the one presented. Least, however, it be said, that the general rules above laid down may be of' doubtful application to this case, we will come more closely to the question upon express authority.
Chitty’s C. L., 281, margin, gives this rule: all in- *536 clictments upon statutes, especially the most penal, muse slate all the circumstances which constitute the definition 0f thé offence in the act, so as to bring the defendant precisely within it.'
, And this rule applies as well to those which take away the benefit of clergy from offences, which exist at common law, as -those by which new felonies are created, nor will the conclusion, contrary to the form of the sta*-’ tute, aid the defect.
And not even the fullest description • of the offence, were it even in the terms of a legal definition, be sufficient, without keeping close to the expression of the statute,” (same book, 286,) “and the precise and technical language in which they are expressed.” (p. 287.)
“These rules, respecting the exact words of the statute, by which the offence was created, apply equally to acts of parliament, by which the benefit of clergy was taken away from the offences, which existed at common law; for if the crime be not in general brought within its exact words, the prisoner can receive only the judgment,, as if no alteration had taken place, and the statute had never been enacted.”
To make correctly an application of these principles, let us look to what the legislature have done, on the offence of murder.
The eigthty-second section of the penal code repeals all laws coming within the jpurview and meaning of this' act.
All previous statutes and the common law, relating to-this offence, are, by the penal code,- swept away. Murder, as the offence was before known, though it did not-cease to be a crime,- was, in future,- to be considered- of in a new aspect.
The common law, which considered murder by wil-fully and maliciously lulling another, was repealed, so far as respected the punishment, and a new description of murder, not the common law description, was defined *537 and enacted by the statute. Murder, in the first degree, by wilful, deliberate, malicious and. premeditated killing, was not known by that description, in Tennessee, until defined by this statute.
How are we to know, if an offence be a newly created one, but by the description of it? It does not exist in the imagination or by association of ideas concerning it; "it is by the name we know it if it be new. Murder, in the first degree, is new to us; so is murder in the second degree. Robbery by the king’s Jfighway was a new offence, although robbery, before the statute, was an offence. The place where, or the circumstance how, may be the subject of enactment. To show the grade of the same- offence, in the eyes of the community, is in future to be viewed in a new light. . This is exactly the case before us. Murder, now, as a crime, is not viewed as formerly. Murder, in' one sense, is not punished with death; murder, in another sense, is punished with death. Under the statute, (23 Henry 8th, ch. 1,) where a man was indicted for robbing in a certain king’s footway, leading from London- to Islington, he was admitted to his clergy, because ’ the statute, which takes away clergy for the crime, describes the place as “in or near a king’s highway,” which -ought thus to have been stated. Robbery was an offence before the statute;. but was clergeable; the statute took away the clergy; in all cases? I answer no, only in the-case specified'in the statute. There was no repeal of all laws as in this cáse. In arguing the question, this point is wholly overlooked, but it must be seen that it is the bearing point in the case.
Touching murder, the common law ceased the moment the act took effect, and the moment the act took effect, murder received a new name in the law, and had a new punishment affixed to the commission of it; as it stands now, it is wholly and entirely'- statutable.' The definition given in the second section, (see penal code,) does not conflict with this opinion, for the third section is an explanation, *538 an enlargement of the second; it gave other names and other definitions. To be governed by the second section alone, we must be thrown back upon the common law, but this cannot be, for that is repealed, and to get the sense of the legislature, we take the whole as well as the definition of the subdivided crime, as to its effect, the punishment. The statute, if repugnant in the second and third sections, must receive a sensible construction, and it can receive none, unless we look into and weigh the definition given for our certain guide, in the third section. I say none, because the second section only reenacts the common law at the moment it is repealed; therefore, by it alone we are cast back precisely where we started from.
Leaving this part of my subject — the common law is repealed; the offence of murder, in the first degree, for the first time, is enacted and known; we are thrown directly upon the record to find the offence charged against the prisoner. With ihe act before us, to assist the search, there is no ambiguity; the case described in the indictment is not of the description in the act of the crime of murder in the first degree, but it is covered by the next offence, mentioned in the third section; being done with malice aforethought, it is murder in the second degree, and there is no escaping from this conclusion, unless the seventy-second section is so far assisting in the premises, as to make this a case of murder in the first degree, contrary to the facts charged in the indictment.
That section is in these words, “All indictments for offences enumerated in this act, which are offences at common law, shall be good if the offences be described, and charged according to the common law, or according to the statute, and the party charged, on conviction, shall receive the punishment prescribed by this act.”
I will now give to this section its whole force and weight against the prisoner, and there can be no construction which touches his life; mark, the judgment is so *539 given according to the statute, hut upon what? upon the conviction. And on what is the conviction founded? upon the indictment. And what facts are, charged in the indictment? Only those which make the offence murder . in the second degree, and judgment on this is according to the statute. It does appear to me there is no avoiding these conclusions.
We call for an issue in legal proceedings, that the point may he -made to which to direct the evidence. The express malice, which constitutes the higher crime, is kept out of view; this express malice is therefore not in isáue; the finding of the jury was, therefore, heyond the allegata or issue, and certainly for so much void: on this we cannot give judgment and follow the statute. As in philosophy, we know the stream cannot rise higher than its source,- so the jury cannot go beyond what the State chose to submit. It is contrary to all experience, that the. lesser can include the greater. But a more minute view of the argument, urged against" the accused, will now be taken.
It is supposed, (judge Green’s argument) that the words, “all murder,” in the beginning of the 3d section, necessarily include all the degrees of that crime afterwards enumerated in that section, and consequently, the definition of murder in the second section, includes every degree of it. This argument moves in a circle, and terminates precisely where it began. And it cannot but be seen, it proves too much, for two reasons: 1st. Because such forced juxtaposition of the words murder and degrees, and the construction put upon them when placed out of their proper connection, destroys the statute, and throws the matter upon the common law; for withofit the common law, "we would have no definition. 2. Because the words, “all murder,” as there used, must stand in connection with the enumerated offences which constitute murder in the first degree, -and stand disjoined from the after words, “and -all other kinds of murder shall be murder in the second *540 degree.” The legislature separate expressly the degrees °f guilt, but the argument melts them into one, as they stood before, and then gives such a construction as repeals the statute.
If, without thus playing the words and shuffling them from one section into another, and back again, they were simply left to stand where the legislature and common sense has placed them, there would be no room for argument. The statute, compared with the indictment, would be found not to have been pursued so as to malte out the higher offence] and we would be saved the trouble of making the statute what it is not, that thereby the life of the deceased may be reached.
To state the proposition sensibly, and according to the statute, it would run thus: “murder shall consist in the ‘wilful and malicious killing of another’ without excuse;” and this murder shall be punished by imprisonment in the penitentiary for - years.
But all murder perpetrated by poison, lying in wait, or other wilful, deliberate, malicious and premeditated killing, shall be punished with death. On thus staling the proposition, there would be left no reasons for argument or doubt.
Again: it is supposed, that as in the third section it is enacted, that the jury in their verdict shall ascertain the degree of the crime; consequently, the legislature intended by the word “crime,” murder in all its degrees, as constituting but one offence, with different grades of guilt. The answer is, that if the legislature so intended, that body also intended that to make out a case for the statute to operate upon, the higher crime should be charged in the indictment.
The argument supposes the admission of the very thing denied, to wit: the form of the indictment, as at common law, good, to reach the higher and lower grade of offence, if the indictment had laid the facts constituting the higher crime, then 11 would admit the conclusion contended for. *541 But there is nothingTo admit in’ favor'jof conclusions to be drawn from false premises; the|mquiry, as to the degrees of guilt, can only become necessary in a case^where the charge includes both degrees, which* this does not. Why find the degree of the guilt, if there be but one degree attempted to be drawn? Any conclusion from this proposition must fail.
The next question I shall consider, is that .which arises upon the facts which are relied upon to prove, the killing within the jurisdiction. The proof is, that Mrs. Mitchell lived between the line thirty degrees and thirtylmin-utes north; and the line run by Matthews; whether north or south of thirty-six degrees thirty minutes, is not clear. Mrs. Mitchell lived, on fifty acres of land, the line of which was the matter in dispute, and gave rise to the killing. The deceased held landj (which adjoined) by a Kentucky warrant, which could not be laid by the laws of Tennessee, south of thirty-six degrees .• thirty minutes. :See the compact with Kentucky, section — . On this •disputed land, the deceased had a tenant, in orhear whose yard, and near the disputed line, and in sight (of Mrs. Mitchell’s door, the slaying happened.
These facts and circumstances show that the slaying was on the disputed border between Kentucky and Tennessee, north of thirty-six degrees thirty minutes. We have often resorted to facts and circumstances, the proof not being clear, from the record, to show that the slaying was within the county. Young vs. the State, at Knoxville, is recollected. If circumstances not more conclusive than the above will be sufficient to reach the life of the-aecused, certainly those equally strong may be toAave him; for itjis a badjrule that will not operate both ways.
The above ..proof being sufficient to establish the place north of thirty-six degrees thirty minutes, what is the la.w arising thereon? The constitution of the State of Tennessee adopts the line of North Carolina. By the charter fixing *542 the boundaries of that State, the line is established at thirty-six degrees thirty minutes north. See the charter, 1 Scott’s Revisal, page 1. Can Kentucky and Tennessee agree upon any other line, so as to give to T ennessee the exercise of a jurisdiction which she would not have without such grant of power from Kentucky?
The constitution of the United States, section 10, provides, that “no State shall enter into any agreement or compact with another State without the consent of congress.
Section 3. No new State shall be formed by the junction of two or more States, or parts of States, without the consent of the legislatures of the States concerned, as well as of congress.
These clauses stand opposed to the compact, so long as the consent of congress is wanting; and it is not pretended such consent has ever been had. There can be no doubt that consent could have been easily obtained. Still as it has not, and being myself sworn to support die constitution, my duty compels me to give to the accused whatever of law fairly operates in his favor.
The section of country where the slaying happened, being beyond the chartered limits of the State, and the compact with Kentucky being inoperative for the reasons above given, no jurisdiction for this offence, committed north of thirty-six degrees thirty minutes, was communicated to the circuit court of Jackson county.
Both of the questions discussed in this opinion are of the utmost consequence to the accused and to the community. They are both suddenly raised, and have been ably debated. Though overruled in my opinion, from the deepest conviction of the correctness of my position, I have only discharged my duty in giving the result of my deliberations. I am for reversing the judgment.
Judgment affirmed.